IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


ROBERT W. CURTIS                                          Plaintiff

v.                              4:07CV00028 SWW/HDY

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                  Defendant

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge Susan Webber Wright.  The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection.  The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations.  A copy must be served on the opposing party.  The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

**DISPOSITION**

Plaintiff, Robert W. Curtis, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance benefits.  Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the

Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged that he was limited in his ability to work by high blood pressure, degenerative arthritis of the lumbar spine, an

elevated white blood count, stomach problems, a history of shoulder surgery and back, leg and hip problems. (Tr. 99, 461) The Commissioner found that he was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through November 21, 2005, the date of his decision.[2] (Tr. 32, 33) On December 22, 2006, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 9-11) Plaintiff then filed his complaint initiating this appeal. (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 57 years old at the time of the second hearing, and 56 on his date last insured. (Tr. 570, 461, 465) He is a high school graduate. (Tr. 570) He has past relevant work as a

---

[1]The Hon. Mark S. Anderson.

[2]Actually, Plaintiff was last insured for the purposes of Title II December 31, 2003. (Tr. 465, 598) In order to receive Disability Insurance benefits, an applicant must establish that he was disabled before the expiration of his insured status. 42 U.S.C. §§ 416(i), 423(c) (1991); Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998); Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990).

maintenance mechanic and a union president/labor relations manager. (Tr. 19, 74-75, 99)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2005). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. Id. at § 404.1520(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. Id. at § 404.1520(a)(4)(ii). If not, benefits are denied. Id. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. Id. at § 404.1520(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. Id., § 404.1520(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. Id.

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. Id., § 404.1520(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. Id., § 404.1520(a)(4)(iv). If so, benefits are denied. Id.

4

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. <u>Id.</u>, § 404.1520(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. <u>Id.</u>

The ALJ found that Plaintiff last met the non-disability requirements of Title II December 31, 2003. (Tr. 32) He found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. <u>Id.</u> He found that Plaintiff had a combination of impairments that were "severe," a status post open reduction-internal fixation (ORIF) of the right femur with residuals of myositis ossificans and myofascial pain syndrome, with chronic low back and hip pain and a history of obesity; he also had a history of bilateral frozen shoulder syndrome, hypertension, headaches and irritable bowel syndrome (each medically controlled) and ongoing tobacco dependence (treated with medication maintenance). (Tr. 23-24, 32) He found that he did not have an impairment or combination of impairments that met or equaled a Listing. <u>Id.</u> He judged that Plaintiff's testimony and that of his wife concerning his impairments and inability to work was not totally credible.

The ALJ determined that Plaintiff retained the residual functional capacity for light work with no overhead reaching or use of the arms, no frequent squatting or stooping and no excessive dust, smoke or chemical odors. <u>Id.</u> He found that Plaintiff could return to his past relevant work as a union president/labor relations manager. (Tr. 31, 33) In the alternative, he found that there were

a significant number of jobs in the economy which Plaintiff could perform, notwithstanding his limitations, for example, general office clerk. (Tr. 33) Consequently, the ALJ concluded that Plaintiff was not disabled. <u>Id.</u>

Plaintiff takes issue with the ALJ's finding that Plaintiff could perform his past relevant work.[3] (Br. 7-11) Plaintiff argues that the job of union president is different than labor relations manager and thus unsupportable. A fair reading of the vocational expert's testimony is that the two jobs were very similar. There does not have to be an exact match in the <u>Dictionary of Occupational Titles</u> for every job that exists- that would be an impossible task.

> The VE listed 218 order clerk jobs and 122 information clerk jobs in Arkansas that he believed Hall could perform. Hall cites the U.S. Department of Labor's <u>Dictionary of Occupational Titles</u> (DOT) and a supplement thereto, for the proposition that these jobs all require reaching, handling, or finger work. Hall's reliance on the DOT as a definitive authority on job requirements is misplaced, however, for DOT definitions are simply generic job descriptions that offer "the approximate maximum requirements for each position, rather than their range." <u>Jones v. Chater</u>, 72 F.3d 81, 82 (8th Cir.1995); <u>see also</u> <u>Roe</u>, 92 F.3d at 678 n. 8. The DOT itself cautions that its descriptions "'may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.'" <u>Roe</u>, 92 F.3d at 678 n. 8 (quoting <u>Dictionary of Occupational Titles</u>, vol. 1, at xiii). In other words, not all the jobs in every category have requirements identical to or as rigorous as those listed in the DOT. We are satisfied that Hall could perform a number of jobs within the categories the VE listed, despite her

---

[3]Plaintiff attacks the ALJ's Step 4 decision that he could perform his past relevant work and his Step 5 decision that there were other jobs that he could perform. Since the Court finds the Step 4 decision to be supported by substantial evidence, there is no need to address Plaintiff's Step 5 arguments.

impairments.

Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997)(footnotes omitted); accord, Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000).

In any event, the time to raise the issue was during cross-examination of the vocational expert. Plaintiff's attorney specifically turned down the opportunity to cross-examine him. (Tr. 615)

Next, Plaintiff argues that he would have to return to his maintenance mechanic job in order to return to his job as union president, and he cannot perform the maintenance mechanic job. (Br. 8-9) Actually, he could have a lighter union job than maintenance mechanic and be union president. Be that as it may, the inquiry at Step 4 is whether Plaintiff remains physically and mentally able to do past work. Barnhart v. Thomas, 540 U.S. 20, 28 (2003).

> [A]n analysis of a claimant's physical and mental capacity to do his previous work would "in the vast majority of cases" serve as an effective and efficient administrative proxy for the claimant's ability to do some work that does exist in the national economy.

Id. (emphasis in original).

Plaintiff also argues that the labor relations manager job has an SVP of 8, which requires over four years and up to ten years of training to learn the job, and he had only been union president three years, so that job cannot constitute past relevant work. (Br. 9-10)

In order to constitute past relevant work, work must have been done in the last 15 years, lasted long enough for the person to learn

to do it and constituted substantial gainful activity. Reeder v. Apfel, 214 F.3d 984, 989 (8th Cir. 2000); 20 C.F.R. § 404.1565(a) (2005).

II. SPECIFIC VOCATIONAL PREPARATION (SVP)

Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

This training may be acquired in a school, work, military, institutional, or vocational environment. It does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job. Specific vocational training includes: vocational education, apprenticeship training, in-plant training, on-the-job training, and essential experience in other jobs.

Specific vocational training includes training given in any of the following circumstances:

a. Vocational education (high school; commercial or shop training; technical school; art school; and that part of college training which is organized around a specific vocational objective);

b. Apprenticeship training (for apprenticeable jobs only);

c. In-plant training (organized classroom study provided by an employer);

d. On-the-job training (serving as learner or trainee on the job under the instruction of a qualified worker);

e. Essential experience in other jobs (serving in less responsible jobs which lead to the higher grade job or serving in other jobs which qualify).

Dictionary of Occupational Titles 1009 (4th ed. rev. 1991) (DOT).

If plaintiff's interpretation of SVP were correct, a cardiologist would have to work over ten years in that position to

learn how to do it.  DOT 55.  So would a judge.  Id. 85.

Finally, Plaintiff contends that the ALJ's residual functional capacity determination is not supported by substantial evidence. (Br. 13-17)

In August of 2000, Plaintiff complained of right leg, hip and back pain.  (Tr. 310)  He indicated that he had "constant" pain since a 1965 motor vehicle accident while he was on active duty.  Id.  He took Extra Strength Tylenol for pain relief.  Id.  In October of 2001, he reported good control of his pain with Tylenol.  (Tr. 296)  He worked despite his right leg, hip and back pain for a number of years.  A condition that was not disabling during working years, and which has not worsened, cannot be used to prove present disability. Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994); Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990); see also Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)(claimant successfully employed many years with current cognitive abilities).  If an impairment can be controlled by treatment or medication, it cannot be considered disabling.  Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995); Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993).

On April 24, 2001, Plaintiff complained of headaches for the past seven weeks.  (Tr. 169, 173)[4]  He was prescribed medication and physical therapy.  (Tr. 171-72)  By May 10, 2001, he was still having daily headaches, but they were not as bad.  (Tr. 161)  On May 24,

---

[4]There is some minor duplication of the record.

2001, Plaintiff reported that his headaches were "very manageable." (Tr. 160)   June 21, 2001, he reported that his headaches had gradually improved and he rarely had to take anything for them.  (Tr. 159)   In November 2001, he reported that he had a mild degree of headache on a near daily basis, but they were less intense and much improved.  (Tr. 157)  In January 2002, he reported that his headaches were gradually "going away."  (Tr. 156)  By June of 2002, he reported that the intensity of his headaches was greatly diminished and they often did not significantly bother him.  (Tr. 154)  His doctor wanted him to stop smoking, taper off his caffeine and limit his Tylenol and replace it with Robaxin.  Id.

In March of 2003, he reported his pain level as 4; 4 was his goal.  (Tr. 527)  In October of 2003, he rated his pain as 3 on a scale of 0-10.  (Tr. 520)  In April of 2004, his pain level was 0. (Tr. 513)

In June of 1998, he applied for a job doing paint and body work.[5] (Tr. 58)   In February of 1999, he applied for a job doing construction work.[6]  Id.  He was not hired for either.  Id.  His applying for those jobs lends support to the ALJ's conclusion that he could perform light work.

Plaintiff's argument seeks to place the burden of proof on the Commissioner.  It is the claimant's burden, and not the Social

---

[5]Automobile-body repairer, 807.381-010, is medium work.  DOT 858.

[6]Construction worker I, 869.664-014, is heavy work.  Id. 908. Construction worker II, 869.687-026, is very heavy work.  Id. 911.

Security Commissioner's burden, to prove the claimant's residual functional capacity.  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Masterson v. Barnhart, 383 F.3d 731, 737 (8th Cir. 2004); Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.  E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  Richardson v. Perales, 402 U.S. at 401; see also Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's complaint be dismissed

with prejudice.

DATED this ___5___ day of February, 2008.


_____
UNITED STATES MAGISTRATE JUDGE